### THE KANSAS CITY, MEXICO & ORIENT RAILWAY COMPANY v. J. N. ROCKWELL.

No. 14,641.   (85 Pac. 802.)

DAMAGES—*Injury to Live Stock—Evidence and Verdict.* In an action for killing plaintiff's horse at a crossing, the animal having broken loose and being upon the highway, the evidence was held to support a verdict for the plaintiff.

Error from Harper district court; PRESTON B. GILLETT, judge. Opinion filed June 9, 1906. Affirmed.

*John A. Eaton,* and *Fred Washbon,* for plaintiff in error.

*E. C. Wilcox,* for defendant in error.

*Per Curiam:* The plaintiff in error ran its train over and killed a horse belonging to the defendant in error, who recovered therefor in the district court of Harper county. The railway company brings the case here for review, and claims that the verdict is contrary to the evidence, and that the evidence does not tend to establish the negligence alleged in the petition.

The record shows, in substance, that the railroad runs through the farm of the defendant in error, from the northeast to the southwest. His residence is located north of the track and on a public highway running north and south and across the railroad. On the

day of the injury the defendant in error was plowing south of the railroad, near the highway. At noon he unhitched his team to go home for dinner. While doing so one of the horses got away and started up the highway toward the railroad-track. The defendant in error mounted the other horse and tried to overtake and catch the loose horse, but did not succeed, and as the loose horse was crossing the railroad-track on the highway it was struck by a train coming from the northeast and killed.

North of the crossing about ten feet was a mail-crane, where the mail for the post-office of Ruby was taken and received. The postmistress, Miss Minnie Belding, was at the mail-crane at the time the train passed. The ground in the vicinity of the crossing is level, and nothing intervened to prevent the engineer or fireman from seeing the horse as it approached the crossing, except the mail-pouch hanging on the crane. Miss Belding saw the situation and stepped out on the track and waved her sunbonnet to attract the attention of the trainmen. She began this movement when the train was about 1300 feet from the crossing and the horse about sixty feet therefrom, and continued it until the train was within twenty-five feet of her. The engineer sounded the whistle when about eighty rods from the crossing for the purpose of warning the postmistress, but no further or other whistling was done. The train was two hours behind time and was running at a rate estimated to be fifty miles an hour. No effort was made to check the speed of the train or to avoid striking the horse. The engineer had his face turned south and apparently was not looking in the direction of the crossing. The fireman was shoveling coal into the fire-box.

The negligence charged in the petition was the failure to keep a proper lookout, the failure to check the speed of the train, and the failure to sound the whistle at the crossing or to give other warning. The train was running upon a slight up grade; such that the train

might have been stopped within 100 feet. There was other evidence in the case amply sufficient to have exonerated the railway company from liability, if the jury had accepted it as the truth. The jury are the exclusive judges of the evidence, and when, as in this case, it is conflicting this court cannot disturb the verdict.

There is evidence in the case which supports several of the averments of negligence in the petition and is sufficient to justify the verdict. The judgment is affirmed.